## JOHN LEISEN v. THE ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Corporation.

(30 L.R.A.(N.S.) 539, 127 N. W. 837.)

**Insurance — Waiver of Forfeiture — Estoppel — Invalidity at Inception — Principal and Agent.**

1. Plaintiff, whose sole interest in the property insured was that of a holder of a sheriff's certificate under a mortgage foreclosure sale, applied for, and there

Note.—As to effect of agent's insertion in application of false answers to questions correctly answered by the insured, see note in 4 L.R.A.(N.S.) 607.

As to effect of nonwaiver agreement on conditions existing at inception of insurance policy, see note in 13 L.R.A.(N.S.) 826.

As to parol evidence rule as to varying or contradicting written contracts, as affected by doctrine of waiver or estoppel, as applied to policies of insurance, see note in 16 L.R.A.(N.S.) 1165.

Estoppel by application made out by agent, see 9 Am. St. Rep. 229.

As to waiver of conditions requiring waivers, to be indorsed in writing, see note 42 Am. Rep. 621.

was issued to him, a fire insurance policy, the premium for which was paid to and retained by defendant company. The policy was the standard form adopted in this state, containing the following. stipulations: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein. . . . This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership. . . . This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or. permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

In applying for such insurance plaintiff acquainted defendant and its agent with the true facts regarding his interest in the property, but notwithstanding such information the defendant's agent carelessly and negligently omitted to state in the policy the nature of plaintiff's said interest. About three weeks after the policy was issued a loss occurred. In an action to recover on the policy, defendant seeks to escape liability upon the ground that such policy, by its terms, is and was void at its inception on account of the above facts.

*Held*, for reasons fully stated in the opinion, that defendant is estopped to urge such defense.

**Fire Insurance — Policy Void at Inception — Waiver of Forfeiture — Cases Overruled.**

2. Where a fire insurance company with full knowledge of facts which, under the stipulations contained in the application or policy, renders such policy void at its inception, issues and delivers the same and collects and retains the premium therefor, it will be deemed in law to have impliedly waived such forfeiture, and will not be permitted to urge the invalidity of the policy in an action to recover for a loss thereunder. Certain language contained in the opinions in Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799, and J. P. Lamb & Co. v Merchants' Nat. Mut. F. Ins. Co. 18 N. D. 253, 119 N. W. 1048, approving the Federal rule to the contrary, is disapproved.

**Fire Insurance — Delivery of Policy and Collection of Premium as Waiver — Waiver of Stipulations.**

3. Where a policy of insurance has been delivered and the premium collected

with full knowledge of all the facts, it would operate as a fraud upon the insured if the insurance company was permitted to avoid the policy after a loss, by urging the invalidity thereof at its inception on account of stipulations contained therein.

**Fire Insurance — Restrictions in Policy upon Power of Agent — Waiver of Conditions by Agent — Construction.**

4. Restrictions in a policy limiting the power of agents to waive conditions except in a certain manner cannot be held to apply to those conditions which relate to the inception of the contract, where the agent, with full knowledge of the facts, issues the policy and collects the premium, and the insured has acted in good faith.

Opinion filed May 28, 1910. Rehearing denied September 10, 1910.

Appeal from District Court, Cass county; Hon. *Charles A. Pollock,* J.

Action by John Leisen against the St. Paul Fire & Marine Insurance Company. From an order overruling a demurrer to the complaint, defendant appeals.

*Geo. A. Bangs,* for appellant.

*V. R. Lovell,* for respondent.

FISK, J. This is an action to recover on an insurance policy. The complaint is in the usual form, alleging that, in consideration of $51 paid by the plaintiff to defendant, the latter issued its policy of insurance, a copy of which is annexed to and made a part of the complaint, whereby defendant insured the plaintiff against loss or damage by fire in the sum of $1,000 on a certain frame building situated on lots 9 and 10, block 21 of the village of Leonard, Cass county, for the term of one year from January 6, 1906. That plaintiff duly performed all of the terms of said contract of insurance on his part to be performed, and that on January 29, 1906, said building was totally destroyed by fire, which fire did not occur by reason of any of the causes enumerated in said policy exempting the Insurance Company from liability in case of fire or loss, and that plaintiff's loss by reason. of such fire exceeded the sum of $1,500. That the destruction by fire, as aforesaid, was complete and the loss total, and that there was no disagreement between the plaintiff and defendant as to the amount of said loss, but that shortly after defendant was notified of the loss

it denied any liability under the policy on the ground that plaintiff's title to the property insured was not truly stated in the policy or the application therefor. Plaintiff, in his complaint, anticipates the defense that the policy never attached or became effective by reason of the fact that plaintiff's title to the property insured was not that of unconditional and sole ownership, etc., and in this respect alleges the following facts: "That at and during the said month of January, 1906, plaintiff was and still is the owner and holder of a certain sheriff's certificate of mortgage foreclosure sale of and upon the said frame building and the lot or parcel of land on which the same was situated, and at the time of the destruction of such building by fire hereinafter referred to, and there was due and unpaid on the said certificate of mortgage foreclosure sale an amount exceeding the total amount of such insurance, and that at the time of the plaintiff's application for the insurance aforesaid, and at the time of the execution and delivery of the policy aforesaid, the plaintiff notified and informed the defendant company and its agent the nature and character of plaintiff's insurable interest in the frame building aforesaid, and that plaintiff was the owner and holder of a sheriff's certificate of mortgage foreclosure sale as aforesaid, but the defendant and its said agent, though it then and there knew, as aforesaid, the character and extent of plaintiff's insurable interest in the frame building and premises aforesaid, carelessly and negligently stated and caused to be stated in the said policy of insurance and application therefor that plaintiff was the owner in fee simple of said premises and the whole thereof, and thereby waived the conditions of said policy of insurance exempting the defendant company from liability in case the plaintiff's interest in the premises insured be not truly stated in such policy or in the application therefor."

The policy is the standard form adopted in this state and contains, among others, the following stipulation: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated therein . . . this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than uncon-

ditional and sole ownership; or if the subject of insurance be a build-ing on ground not owned by the insured in fee simple.  . . .

"This policy is made and accepted subject to the foregoing stipula-tions and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement in-dorsed hereon, or added hereto, and as to such provisions and condi-tions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

A demurrer was interposed to the complaint upon the ground that the complaint fails to state facts sufficient to constitute a cause of ac-tion. Such demurrer was overruled and the appeal is from the order overruling the same.

In brief, appellant's contention on this appeal is that under the facts alleged in the complaint the policy is and was void at its inception, for the reason that the interest of the insured was not that of "unconditional and sole ownership," and the nature and extent of his interest in the property was not stated in, nor indorsed upon, the policy. In other words, notwithstanding the fact that plaintiff, in applying for the insurance and at the time of the execution and delivery of the policy, expressly notified and informed defendant and its agent of the nature and character of his interest in the property, and that defendant, with such notice and knowledge, executed and delivered to plaintiff such policy and collected the premium thereunder, defendant may, nevertheless, urge that such policy was void at its inception and no liability ever attached thereunder; that the doc-trine of implied waiver and estoppel cannot be successfully invoked, because the parties, by their contract, have otherwise stipulated and the legislature by statute, in effect, otherwise declared.

If appellant's contention be sound, the result would be most harsh and inequitable. We cannot countenance such a doctrine unless im-peratively required so to do by plainly established principles of law.

We are entirely clear that we are confronted with no such situation. On the contrary we are entirely clear that appellant's contention is without support on principle or reason, and is contrary to the overwhelming weight of authority in this country. In support of this broad assertion we proceed to give our reasons, but in the main shall adopt the reasoning of other courts upon the questions involved.

We will first notice the present status of the adjudications of this court and its predecessor, the territorial court, so far as material to the question here involved. In Lyon v. Insurance Co. 6 Dak. 67, 50 N. W. 483, the court unanimously held that defendant's agents had the power to waive the matter of encumbrances which were known to them at the time of negotiating and accepting the risk. In that case, as the case at bar, it was contended that the policy was never in force on account of the omission of the insured to comply with a condition requiring him to inform the company of encumbrances on the property. Such condition was as follows: "If the property hereby insured, either real or personal, or any part thereof, be or shall become encumbered by mortgage, judgment, or otherwise, and it be not so stated in the written application or indorsed in writing on the policy, this policy and every part thereof shall be void." The proof showed that the property was encumbered by mortgage at the time the application for insurance was made, and at the time the loss occurred, but that the agents of the insurance company knew such fact, but nevertheless issued the policy and collected the premium. Plaintiff contended there as here, that the stipulation in the policy above quoted had been waived, and such contention was sustained.

Again in the case of Waterbury v. Dakota F & M. Ins. Co. 6 Dak. 468, 43 N. W. 697, the territorial court in speaking on this point said: "It is too well settled to be now questioned that the company, or its agent acting within the scope of his authority, may waive any of the conditions of the policy, *and if at the time of issuing the policy the company or such agent knows the falsity of a representation made by the applicant in procuring the insurance, the company is estopped from asserting its falsity in order to avoid liability.*" Citing numerous cases.

During the early history of this court, and over twenty years ago, it was called upon to consider a similar question in the case of John-

20 N. D.—21.

son v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799. In speaking upon the question of estoppel the court, among other things, there said: "But it is further contended by respondent's counsel that defendant is estopped from claiming a forfeiture of the policy on account of the false answers as to encumbrances contained in the application, for the reason that such answers were wholly unauthorized by the plaintiff, and were falsely written into the application by E. E. Strong, the soliciting agent, despite the fact that he . . . was fully and truthfully informed by the plaintiff as to the encumbrances. The fact of deception practiced by the agent is not questioned; but who shall shoulder the consequences of such deception is a question much mooted in the adjudicated cases, and one which has given this court no little difficulty. For whom was Strong acting, and who was he representing, when soliciting and taking plaintiff's application for the insurance? The earlier cases held quite uniformly that, where the insured signed a written application as a basis for the contract of insurance, he adopted all of its contents and was bound by it, and that if by his request or permission the solicitor of the insurance acted for him in filling out the application, such solicitor was so far forth the agent of the insured, and not the agent of the company. Some courts still adhere to this holding, but the decided weight of authorities is to the contrary." The court here cited numerous cases among which is Kausal v. Minnesota Farmers' Mut. F. Ins. Asso. 31 Minn. 17, 47 Am. Rep. 776, 16 N. W. 430, from which it quotes approvingly the following very accurate statement of the rule: "Agents for an insurance company, authorized to procure applications for insurance and to forward them to the company for acceptance, must be deemed the agents of the insurers in all that they do in preparing the application, or in any representations they may make as to the character or effect of the statements therein contained. Hence, when such agent, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are stated to him by the applicant, the error is chargeable to the insurer, and not to the insured. This is the rule in case of 'mutual' as well as 'stock' or 'proprietary' companies. The rule is not affected or changed by a stipulation inserted in the policy subsequently issued that the acts of such agent in making out the application shall be deemed the acts of the insured, and not of the

insurer. Such stipulation does not convert acts done for the insurer into the acts of the insured. The admission of the verbal testimony to show that the application was filled up by the agent of the company, and that the facts were correctly stated to him, but that he, without the knowledge of the insured, misstated them in the application, is not in violation of the rule that verbal testimony is not admissible to vary a written contract. It proceeds upon the ground that the contents of the paper was not the statement of the applicant, and that the insurance company by the act of their agents is estopped to set up that it is the representation of the insured." This court thereafter further said: "The defendant sent its policy direct to the plaintiff, and the latter had possession of it some months prior to the loss. A copy of the application containing the false answers, as written by the agent, was indorsed upon the back of the policy, but such indorsement was not referred to in the body of the policy. The trial court found that the plaintiff did not at any time object to the answers as stated in the application, or request the defendant to correct the same. The evidence, however, is conclusive that the plaintiff did not in fact know that a copy of the application was indorsed upon his policy, nor discover the errors in the application respecting the encumbrances until the day preceding the trial. Under these circumstances the question arises whether the plaintiff, despite the contrary fact, is not conclusively presumed to have read and become acquainted with the contents of the policy, including the copy of his application for insurance indorsed on the policy. If such is the presumption of law, then the further question arises whether the plaintiff is guilty of such laches in not seeking a correction or reformation of the contract as will defeat his recovery upon the policy. It is well settled that where an insurance policy is delivered to the applicant, he is presumed to know its contents, and cannot evade a forfeiture for a violation of its provisions, on the ground that he never read it." Here the court cites Smith v. Continental Ins. Co. 6 Dak. 433, 43 N. W. 810; Hankins v. Rockford Ins. Co. 70 Wis. 1, 35 N. W. 34; Cleaver v. Traders' Ins. Co. 65 Mich. 527, 8 Am. St. Rep. 908, 32 N. W. 660, and other authorities. We do not question the soundness of these authorities, but in citing them the court evidently overlooked the very important fact that they do not involve forfeitures for breaches

of conditions existing at the inception of the contract, the facts creating such breaches being fully known to the agent and hence to the insurance company at the time the policy was delivered and the premium paid. In the case of Smith v. Continental Ins. Co. 6 Dak. 433, 43 N. W. 810, Judge Templeton wrote the opinion. He very clearly differentiates that case from a case like the one at bar. He says: "This is a very different case from that where a soliciting agent purposely or erroneously inserts false answers to questions in an application, the applicant stating the facts truthfully and being innocent of fraud. In such a case the subagent is acting within the scope of his powers and duties,—taking applications is his business,—and notice to him is notice to the principal, under well-settled rules of law. If Angell had been a general agent,— that is, if he had been authorized by the company to make contracts of insurance and issue policies,—he doubtless would have had implied authority to waive the effect of conditions in the policy inconsistent with existing facts."

The court in the Johnson Case thereafter quotes approvingly from the Federal rule, as announced in New York L. Ins. Co. v. Fletcher, 117 U. S. 519, 29 L. ed. 934, 6 Sup. Ct. Rep. 837, and thereafter, among other things, says: "The application was made a part of the policy in express terms and a copy thereof was indorsed upon the policy. . . . Upon receiving the policy with copy indorsed thereon, the plaintiff is legally chargeable with notice and knowledge of the entire terms of the insurance contract and he is estopped from denying such knowledge. It was the plaintiff's duty to have taken steps at once upon receiving the policy to have the same corrected or rescinded. He did not do so, and by his silence when required to speak he became constructively a participant in the original fraud of the agent and thereby forfeited his right under the policy; and unless defendant has waived such forfeiture the plaintiff must fail to recover." The court thereafter held that such forfeiture had been waived.

As we shall hereafter see, the above rule is no doubt sound when properly applied, but as there applied it is clearly against the great weight of modern authority as well as reason, and we feel obliged to modify the rule thus announced, so that it will apply only to forfeitures for breaches of conditions subsequent, except in cases where

the assured has actual knowledge at the inception of the contract of facts and conditions creating a forfeiture or annulling the policy.

This court in the case of Thompson v. Travelers' Ins. Co. reported in 11 N. D. 274, 91 N. W. 75, and 13 N. D. 444, 101 N. W. 900, again recognized the doctrine of implied waiver and estoppel in clear and explicit language. The present chief justice, in differentiating that case from certain cases cited and relied on by respondent in support of a waiver of the forfeiture, said: "Not one of the numerous cases cited by respondent is in point on the facts of the case at bar. These cases are cases where premiums were paid, accepted, and retained with knowledge of the facts constituting the forfeiture, and of course it was held that the companies were thereafter estopped to plead the forfeiture claimed. With that doctrine this court fully concurs."

On the second appeal Chief Justice Young, in voicing the opinion of the court, clearly recognized the right of plaintiff to prove an estoppel by showing that when the policy was delivered, and the premium collected by defendant's agent, he had knowledge of the fact which the insurance company claimed avoided the policy, the entire opinion being devoted to the question of the insufficiency of the proof offered for such purpose. We quote from the syllabus as follows: "1. The life insurance policy upon which this action is brought contained this condition: 'This policy shall not take effect unless the first premium is actually paid while the assured is in good health.' Held, that *in the absence of an estoppel,* the liability of the insured depends upon the actual, and not mere apparent, good health of the assured when the first premium was paid. . . . 2. In order that the acceptance or retention of the premium may estop an insurer from relying upon a breach of condition in the policy, it must appear that it had knowledge of the facts constituting the breach."

Thus it will be seen that this court was, until the decision in J. P. Lamb & Co. v. Merchants' Nat. Mut. F. Ins. Co. 18 N. D. 253, 119 N. W. 1048, firmly committed to the doctrine that the insurer, by knowledge on the part of its agent, which knowledge is imputed to the company, of facts existing at the inception of the policy which, under its terms would avoid it, will be estopped to urge such invalidity. In denying a rehearing in the Lamb Case Judge Spalding used certain language which might be construed as approving a contrary rule, and

appellant's counsel in the case at bar quotes therefrom the following: "One point was, however, not referred to which we deem it advisable to mention at this time. The policy contained a provision reading as follows: 'No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as, by the terms of this policy, may be indorsed hereon or added hereto, and, as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached.' The authorities on similar provisions are in hopeless conflict, but the Supreme Court of the United States in 1901 had this identical provision under consideration in Northern Assur. Co. v. Grand View Bldg. Asso. 183 U. S. 308, 46 L. ed. 213, 22 Sup. Ct. Rep. 133, and, after an exhaustive review of the conflicting authorities, sustained the provision in question as against the contention that it could be waived in some manner other than in writing indorsed on the policy. The opinion in that case is most instructive, as is also that in Modern Woodmen v. Tevis, 54 C. C. A. 293, 117 Fed. 369, in which the opinion of the circuit court of appeals of the eighth circuit was delivered by Judge Sanborn."

As we shall hereafter see, the rule of the Federal court as announced in Northern Assur. Co. v. Grand View Bldg. Asso. supra, is opposed to the decisions of nearly every state in the union which has had occasion to pass upon the question, and to the extent that the opinion in J. P. Lamb & Co. v. Merchants' Nat. Mut. F. Ins. Co. supra, approves the rule thus announced by the Federal court the same is hereby disapproved.

We deem the correct rule to be as stated in the leading case of Wood v. American F. Ins. Co. 149 N. Y. 382, 52 Am. St. Rep. 733, 44 N. E. 80, as follows: "The restrictions inserted in the contract upon the power of the agent to waive any condition, unless done in a particular manner, cannot be deemed to apply to those conditions which relate to the inception of the contract, when it appears that the agent has delivered it and received the premiums with full

knowledge of the actual situation. To take the benefit of a contract with full knowledge of all the facts, and attempt afterwards to defeat it, when called upon to perform, by asserting conditions relating to those facts, would be to claim that no contract was made, and thus operate as a fraud upon the other party."

That court in a later case also said "that the agent of a fire insurance company may, by issuing a policy with knowledge of the facts, waive a condition that the policy shall be void if the property insured be encumbered, and a note of the encumbrance be not indorsed upon the policy, notwithstanding a provision in the policy that no agent of the company shall have power to waive any such condition, except by written endorsement." Skinner v. Norman, 165 N. Y. 565, 80 Am. St. Rep. 776, 59 N. E. 309. That the rule of the New York cases is supported by the overwhelming weight of authority must be conceded. We cite the following cases supporting the above rule: Welch v. Fire Asso. of Philadelphia, 120 Wis. 456, 98 N. W. 227; Home Ins. Co. v. Stone River Nat. Bank, 88 Tenn. 369, 12 S. W. 915; German-American Ins. Co. v. Yeagley, 163 Ind. 651, 71 N. E. 897, 2 A. & E. Ann. Cas. 275; King v. Council Bluffs Ins. Co. 72 Iowa, 310, 33 N. W. 690; McGonigle v. Susquehanna Mut. F. Ins. Co. 168 Pa. 1, 31 Atl. 868; Continental Fire Asso. v. Norris, 30 Tex. Civ. App. 299, 70 S. W. 769; Continental F. Ins. Co. v. Brooks, 131 Ala. 614, 30 So. 876; Phœnix Ins. Co. v. Fleming, 65 Ark. 54, 39 L.R.A. 789, 67 Am. St. Rep. 900, 44 S. W. 464; Rhode Island Underwriters' Asso. v. Monarch, 98 Ky. 305, 32 S. W. 959; Hartford F. Ins. Co. v. Keating, 86 Md. 130, 63 Am. St. Rep. 499, 38 Atl. 29; Improved Match Co. v. Michigan Mut. F. Ins. Co. 122 Mich. 256, 80 N. W. 1088; Home Ins. Co. v. Gibson, 72 Miss. 58, 17 So. 13; Flournoy v. Traders' Ins. Co. 80 Mo. App. 655; Parsons v. Knoxville F. Ins. Co. 132 Mo. 583, 31 S. W. 117, affirmed in banc, 132 Mo. 600, 34 S. W. 476; Benjamin v. Palatine Ins. Co. 80 App. Div. 260, 80 N. Y. Supp. 256, affirmed in 177 N. Y. 588, 70 N. E. 1095; Grabbs v. Farmers' Mut. F. Ins. Asso. 125 N. C. 389, 34 S. E. 503; Gould v. Dwelling-House Ins. Co. 134 Pa. 570, 19 Am. St. Rep. 717, 19 Atl. 793; Gandy v. Orient Ins. Co. 52 S. C. 224, 29 S. E. 655; Virginia F. & M. Ins. Co. v. Richmond Mica Co. 102 Va. 429, 102 Am. St. Rep. 846, 46 S. E. 463; Wagner v. Westchester F. Ins. Co. 92 Tex.

549, 50 S. W. 569; Bartlett v. Fireman's Fund Ins. Co. 77 Iowa, 155, 41 N. W. 601; Medley v. German Alliance Ins. Co. 55 W. Va. 342, 47 S. E. 101, 2 A. & E. Ann. Cas. 99; Orient Ins. Co. v. McKnight, 197 Ill. 190, 64 N. E. 339; German Ins. Co. v. Shader, 68 Neb. 1, 60 L.R.A. 918, 93 N. W. 972; Grand View Bldg. Asso. v. Northern Assur. Co. 73 Neb. 149, 102 N. W. 246.

Many of the foregoing cases were decided since the Supreme Court of the United States handed down the Northern Assurance Company decision, and they expressly disapprove the same. In Welch v. Fire Asso. of Philadelphia, 120 Wis. 456, 98 N. W. 227, Marshall, J., said: "It is well understood that the judicial rule here discussed is peculiar to insurance contracts, and significantly exceptional in that it ignores the familiar principle applied to written obligations generally, that he who becomes a party to such an obligation is presumed to have knowledge of its contents and is bound thereby, unless by some artifice resorted to by the other party thereto, reasonably calculated to prevent or deter him from obtaining such knowledge, he is so prevented, or deterred. Bostwick v. Mutual L. Ins. Co. 116 Wis. 392, 67 L.R.A. 705, 89 N. W. 538, 92 N. W. 246. As an original proposition it would be difficult to justify that special favor to policy holders in actions to recover losses sustained. The long line of decisions in this state supporting it, however, precludes any change thereof other than by legislative enactment. The authorities elsewhere are not all in harmony with it. A very few condemn it. Northern Assur. Co. v. Grand View Bldg. Asso. 183 U. S. 308, 46 L. ed. 213, 22 Sup. Ct. Rep. 133, is a significant instance thereof. In that case the departure from general principles is most vigorously condemned in this language: 'It is manifest that the theory that such parol evidence, though it may not be competent to change the written contract, may be received for the purpose of raising an estoppel *in pais*, is a mere invasion of the rule excluding parol testimony when offered to alter a written contract. A party suing on a contract in an action at law must be conclusively presumed to be aware of what the contract contains, and the legal effect of his agreement is that its terms shall be complied with.' The court said further, in effect, the only exception to that is where, by fraud, a person is induced to accept a contract different from the one agreed upon, in excusable ignorance of the variance. The exception thus condemned has the sanction

of some forty years of our judicial history and of the general run of authorities. Under the circumstances we do not feel warranted in overturning it or seriously questioning the wisdom of it. The conclusion to which we have arrived is supported by the courts generally where a policy law exists. That is amply shown by citations in the brief of counsel for respondent, and the absence of authorities to the contrary in that of appellant, and our own inability to discover any. In the supporting authorities it appears that there was no judicial hesitation in holding that a policy like ours does not, in letter or in spirit, affect the established rule that an insurance company, barring fraud upon it, participated in by the assured and its agent (Koerts v. Grand Lodge, O. H. S. 119 Wis. 520, 97 N. W. 163), cannot avoid the effect of the law charging it with knowledge which its agent has at the time of delivering its policy of insurance, respecting the condition of the subject thereof. In all cases, or most of them, waiver is sharply distinguished from estoppel." Citing numerous cases.

In addition to the foregoing authorities, we cite the following very recent cases holding to the same effect: Fosmark v. Equitable Fire Asso. 23 S. D. 102, 120 N. W. 777; O'Neill v. Northern Assur. Co. 155 Mich. 564, 119 N. W. 911; Sharp v. Scottish Union & Nat. Ins. Co. 136 Cal. 542, 69 Pac. 253, 615; Allen v. Home Ins. Co. 133 Cal. 29, 65 Pac. 138; Loring v. Dutchess Ins. Co. 1 Cal. App. 186, 81 Pac. 1025; Springfield F. & M. Ins. Co. v. Price (1909) 132 Ga. 687, 64 S. E. 1074; Wisotzkey v. Niagara F. Ins. Co. 112 App. Div. 599, 98 N. Y. Supp. 760; Plunkett v. Piedmont Mut. F. Ins. Co. 80 S. C. 407, 61 S. E. 893; Westchester F. Ins. Co. v. Ocean View Pier Co. 106 Va. 633, 56 S. E. 584; Glens Falls Ins. Co. v. Michael, 167 Ind. 659, 8 L.R.A. (N.S.) 708, 74 N. E. 964, 79 N. E. 905; People's F. Ins. Asso. v. Goyne, 79 Ark. 315, 16 L.R.A.(N.S.) 1180, 96 S. W. 365, 9 A. & E. Ann. Cas. 373; House v. Security F. Ins. Co. — Iowa, —, 121 N. W. 509; Capital F. Ins. Co. v. Montgomery, 81 Ark. 508, 99 S. W. 687; Parsons v. Lane (Re Millers' & Mfrs.' Ins. Co.) 97 Minn. 98, 4 L.R.A. (N.S.) 231, 106 N. W. 485, 7 A. &. E. Ann. Cas. 1144; 19 Cyc. Law & Proc. pp. 812–814 and cases cited; 16 Am. & Eng. Enc. Law, 2d ed. p. 949; 3 Cooley, Briefs on Insurance, 2650–2655; Clement, Fire Ins. 418; Ostrander, Fire Ins. § 265; Vance, Ins. pp. 304, 305.

In speaking on the question of waiver or estoppel under facts here

involved, Mr. Vance says: "Issue and delivery of a policy, with knowl-
edge by the company or its agent of existing facts which by its terms or
conditions would render it void, operates as a waiver or estoppel, pre-
venting the company from claiming a forfeiture by reason of such facts.
By the weight of authority this is true although the policy contains the
usual limitation upon the agent's authority."  Ostrander says [§ 356]:
"When a person is employed to solicit risks and take applications to be
forwarded to the company for approval, but has no authority to make a
complete or binding contract of insurance, and has never been held out
by his principal as having such power, he cannot waive any condition or
requirement of the policy.  It has, however, often been held that the
soliciting agent is competent to do certain things in respect to his dis-
tinctive duties that will create estoppel.  Any knowledge communicated
to him in regard to the risk he solicits at the time of such solicitation
will be imputed to the company.  If the facts imparted to the solicitor
are of such a cnaracter as under the terms of the policy will cause an
avoidance, unless disclosed, such as other insurance, defective titles, en-
cumbrances, etc., and such facts are by him withheld from the company,
the latter will be estopped from insisting on the failure of the insured
to give the required notice as a defense to an action on the policy."
Vance says [p. 304]:   "Again, a second incident of the relation of prin-
cipal and agent is that any information material to the transaction,
either possessed by the agent at the time of the transaction or acquired
by him before its completion, is deemed to be the knowledge of the prin-
cipal, at least so far as that transaction is concerned, even though in
fact the knowledge is not communicated to the principal at all.  It is
here to be observed, and the importance of the principle is so great that
it cannot be too strongly emphasized, that *these incidents of agency are
created by law, and not by the parties.*  The insurer is charged with
the knowledge acquired by its agent in making or negotiating a contract
of insurance, not because he has consented to be so charged, nor be-
cause he has authorized his agent so to bind him, but because, as a legal
consequence of the relation he sustains to the agent, the latter's knowl-
edge is imputed to him.  *It therefore follows that this incident, created
by the law, in response to the demand of public policy, irrespective of
agreement, cannot be destroyed or altered by the agreement of the
parties.*  The parties cannot, by their contract, contravene the policy

of the law in this instance, any more than the husband, by contract, can escape his duty to support the wife, or the carrier can by contract exempt himself from liability for his negligent failure to carry safely his passenger. Those cases which ignore this principle and regard these legal incidents as powers conferred and subject to limitation are much to be deplored."

By the issuance and delivery of the policy, and the acceptance of the premium, with knowledge of the existing facts relative to plaintiff's interest in the property, the company, in effect, said to the plaintiff that, notwithstanding the stipulations and conditions in the policy to the contrary, we will treat the same as a valid and binding contract of indemnity. In other words we agree not to urge such conditions or stipulations to defeat such policy in the event plaintiff shall assert any rights thereunder. The company thereby, in effect, said to plaintiff, the policy is a valid policy of insurance. It would seem, therefore, on the plainest principles of equity and good conscience, that the company should be estopped by such conduct to assert the contrary. As said thirty-two years ago by Justice Walker of the Illinois supreme court: "This information given to the agent operated as notice to the company, and it having accepted the premium and assumed the risk, it must be held that the company has waived the condition, or if not, it is estopped from urging its breach as a defense. To permit such a defense, would be highly unjust and iniquitous. It would shock the sense of right and fair dealing to permit money to be obtained under such assurances, and to permit the company to say, we are not bound, and did not intend, on our part, to be bound for any loss that might occur; we misled and deceived you into paying the premium, and although we did not intend to be bound, and knew we were not, still we will keep the premium, and you must suffer the loss. This is the substance of the defense, and such a defense cannot be allowed to prevail." St. Paul F. & M. Ins. Co. v. Wells, 89 Ill. 82.

Appellant's counsel lays stress upon the fact that this is a standard policy prescribed by statute, and that the courts are therefore bound to give it effect. Such argument has repeatedly been made and as often repudiated by the courts as unsound. It is firmly established that a form of policy of fire insurance, although prescribed by law, is, when issued by the insurance company, none the less a contract and to be construed

as such by the courts, and that while it may affect a question of pure waiver it does not abrogate the doctrine of estoppel. In addition to the foregoing authorities, see Clement, on Fire Insurance, pp. 409, 451, and cases cited. Moreover, such rule is crystalized by statute in this state. Section 6058 Rev. Codes 1905, provides: "Policies of insurance in the form prescribed by the last section shall be in all respects subject to the same rules of construction as to their effect or the waiver of any of their provisions as if the form thereof had not been prescribed."

It is urged that by receiving and retaining the policy, plaintiff is conclusively deemed to have acquiesced in and agreed to its terms. Such contention has the support of many authorities, and no doubt is sound when properly applied. Aside from the case of Northern Assur. Co. v. Grand View Bldg. Asso. 183 U. S. 308, 46 L. ed. 213, 22 Sup. Ct. Rep. 133, and the few other authorities adhering to the rule there announced, it is firmly settled that restrictions in a policy on the power of agents with respect to waiver have no application to those conditions relating to the inception of the contract. 3 Cooley, Briefs on Insurance pp. 2510 and 2511. Mr. Cooley states the reason for this doctrine to be that "the insured is not bound by restrictions and stipulations of which he has no knowledge. As an insured cannot be charged with constructive notice of the stipulations in a policy until he has accepted it, therefore a limitation in a policy on an agent's authority will not bind the insured with reference to matters occurring prior thereto. Until an insured has either actual or constructive notice of the limitations on an agent's authority, he may assume that the agent has the authority indicated by the apparent scope of his employment." At page 2619 the same author says: "Unquestionably, the weight of authority supports the doctrine that an insured cannot rely on waivers by parol prior to the issuing of a policy. *But this rule does not apply to implied waiver by the issuance of a policy, and receipt of the premiums thereon, with knowledge of matters vitiating the policy at its inception;* for a large majority of the cases, especially the more recent ones, support the rule that an insurance company will not be permitted to defeat a recovery upon a policy issued by it by proving the existence of facts which would render it void, where it had full knowledge of it when the policy was issued." As said by the Georgia court in City F. Ins. Co. v. Carrugi, 41 Ga. 660: "It would be a fraud to take a man's

money, with a full knowledge of the facts, and then set up that a partic-
ular mode of proving the fact, agreed upon by the parties, but not re-
quired by law, had not been resorted to.   The receipt of the money and
the issuing of the policy is a waiver of the indorsement; even if it be
admitted that the parties may, by their contract, agree as to how any
particular fact shall be proven."   And in Dwelling House Ins. Co. v.
Brodie, 52 Ark. 11, 4 L.R.A. 458, 11 S. W. 1016, the court said: "The
issue of a policy by an insurance company, with a full knowledge or
notice of all the facts affecting its validity, is tantamount to an assertion
that the policy is valid at the time of its delivery, 'and is a waiver of the
known ground of invalidity.' "   See also 3 Cooley, Briefs on Insurance,
pp. 2632, 2652, and authorities cited.

Of course, in order to successfully invoke the doctrine of estoppel
against the insurer as above stated, the insured must be devoid of any
taint of fraud on his part.   If there is any collusion between him and
the insurance company's agent, he cannot invoke the doctrine of implied
waiver or estoppel.   If, however, the insured in good faith informs the
agent of the actual facts regarding the property insured, and makes
truthful answers to the questions asked him by such agent, we know
of no sound reason why the insurance company should be permitted,
in a court of law, to urge in avoidance of the policy that answers or rep-
resentations inserted in the application or policy by the agent, either
through mistake, carelessness, or fraud, avoid such policy and exonerate
the company from all liability thereunder.   The few courts holding to
the contrary base their decisions upon the untenable ground that to per-
mit plaintiff to prove facts contrary to the written statements in the
application and policy would violate the rule against the admission of
parol testimony tending to vary the written contract.   But, as will be
seen by the foregoing authorities, the courts, with but few exceptions,
hold "that to apply the doctrine as to parol testimony with the strictness
demanded by the insurer would be to make a rule of evidence adopted
as a protection against fraud an instrument of the very fraud it was
intended to prevent."   3 Cooley, Briefs on Insurance, 2565, 2566, and
cases cited.

For a correct statement of the rule regarding the subjects of waiver
and estoppel as applied to the standard form of policy such as the one
in the case at bar, see Clement on Fire Ins. pp. 405, 448, and cases

cited. At pp. 415 and 416 the rule is stated as follows: "The stipulation in a policy that no agent or other representative shall have power to waive any condition may be effective as against an alleged waiver by agreement or contract with an agent or representative, *but has no application when the law declares a waiver by estoppel because of the acts of the company through its agent or representative. Such estoppels do not rest upon the power or lack of power of the agent to change the provisions of the policy or waive any of its agreements, but arise in law because of the acts of the company through its agent acting in the scope of his apparent power as its representative.* . . . Restrictions in the policy upon the power of agents to waive its conditions, unless done in a particular manner, do not apply to those conditions which relate to the inception of the contract when it appears that company's agent delivered it and received the premium with full knowledge of the actual situation."

The above rule is supported by the great weight of authority. We shall not attempt here to cite the many cases. They are collated in the opinion of Mr. Justice Corson in the recent case from South Dakota,—Fosmark v. Equitable Fire Asso. 23 S. D. 102, 120 N. W. 777. Particular attention is called to the case of People's F. Ins. Asso. v. Goyne, 79 Ark. 315, 16 L.R.A.(N.S.) 1180, 96 S. W. 356, 9 A. & E. Ann. Cas. 373, from which we quote the following: "A fire insurance company may be estopped by the conduct of its agent, acting within the apparent scope of his authority, from availing itself of a false answer to a material question, or of a breach of warranty, or of a violation of the provisions of the application or policy, notwithstanding clauses in the application or policy to the effect that the company shall not be bound by any such conduct or representation of its agent; and such estoppel or waiver may be proved by parol evidence, though the policy or application contains clauses to the effect that no waiver shall be effective unless indorsed in writing on the policy at the home office of the company."

Appellant's counsel strenuously contends, in effect, that by force of certain statutory provisions in this state the rule of implied waiver or estoppel cannot be invoked. The particular sections of the statute relied on are §§ 5952 to 5956 and 5960 and 5961, Rev. Codes 1905. These sections merely deal with the subject of warranties in relation

to insurance contracts and the effect of a breach thereof. It is a sufficient answer to such contention to say that in our opinion it was not the legislative intent, by the enactment thereof, to do away with the well-settled and most equitable rule of implied waiver and estoppel *in pais*. It is inconceivable that it could have been the legislative intent to enable insurance companies, in effect, to take advantage of their own mistakes, carelessness, or fraud, or that of their agents. In other words, to repudiate all liability on account of a state of fact, involving misrepresentations, for which the company or its agent is alone to blame. Although like statutory provisions exist in California and South Dakota, the decisions in those states do not support counsel's contention. On the contrary, the courts of both states most emphatically recognize and enforce the doctrine of implied waiver and estoppel as announced so generally by nearly all courts in this country.

Counsel's criticism of certain of the New York cases shows that he apparently fails to distinguish between a waiver and an estoppel, and also fails to distinguish between conditions or warranties which are precedent and those which are subsequent to the formation of the contract.

Our conclusion leads to an affirmance of the order appealed from. All concur, except SPADLING, J., dissenting.

SPALDING, J. (dissenting). The rule on the question involved in this case was established in Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799, in 1890. The Supreme Court of the United States in 1902, in Northern Assur. Co. v. Grand View Bldg. Asso. 183 U. S. 308, 46 L. ed. 213, 22 Sup. Ct. Rep. 133, reviewed the authorities with great care and settled the question for the Federal courts in harmony with the views of this court expressed in the Johnson Case. The case of New York L. Ins. Co. v. Fletcher, 117 U. S. 519, 29 L. ed. 934, 6 Sup. Ct. Rep. 837, also covers the same ground. I see no reason of sufficient weight to warrant this court in overruling the Johnson Case and disregarding the Federal authorities and thereby establishing two rules in this jurisdiction. It results in this: that foreign insurance companies who write large risks in this state and suffer losses in cases where this principle is in question are not liable, while foreign companies which write risks in this state of less than

$2,000, and all domestic companies are liable. In Dunham v. Peterson, 5 N. D. 414, 36 L.R.A. 232, 57 Am. St. Rep. 556, 67 N. W. 293, this court said: "What, in the absence of any statute on the subject, would be decisive with us, even if we were in that state of mind on this question described by the phrase 'halting between two opinions,' is the fact that in the Federal courts this more universally accepted rule has become the law by reason of the decision of the Federal Supreme Court. .. . . There should be only one rule in this state whether the litigant resort to the Federal court or the state tribunals."

While the weight of authority seems to be in harmony with the majority opinion, yet on close examination many of the authorities which at first reading appear to be so, are distinguishable. This is shown by the opinion in Russell v. Prudential Ins. Co. 176 N. Y. 178, 98 Am. St. Rep. 656, 68 N. E. 252. The policy under consideration in that case contained provisions similar to those in question in the case at bar, and the court held that the insurer was not liable where the waiver had not been indorsed on the policy, and distinguished Stewart v. Union Mut. L. Ins. Co. 155 N. Y. 257, 42 L.R.A. 147, 49 N. E. 876, and prior decisions which appeared to be in conflict with the Russell Case, on the ground that in the former decisions it was clear by inevitable inference that they had been based upon the fact that the policy had never been delivered to the insured and that consequently he could not be charged with knowledge of its contents, and the court says: "Is this contract to be enforced as clearly written, or is it to be ignored for the reason that men enter into contracts without reading them, and assume that a vague and unproven custom exists permitting a local agent to give life and validity to the policy without reference to the terms of the contract of insurance? The question may be put in another form. Can an insurance company enter into a contract with a person applying for insurance which can so fix the precise conditions under which the policy shall issue that the agent, in the absence of express authority, cannot abrogate it? It would seem that the statement of the foregoing questions would compel an answer in favor of the company without argument."

Mr. Freeman, in an exhaustive note on this subject contained in 107 Am. St. Rep. on page 123, states that the weight of more recent adjudications is in favor of the power of the insurer to limit the

authority of an agent, and that when brought to the actual knowledge of the insured, or when made a part of the terms of the contract of insurance, the insurer is bound thereby. The conflict of authority on the subject arises by reason of some courts emphasizing one and other courts another of several conflicting legal principles. As I read the opinion in the Johnson Case it, in effect, lays down the rule that the insured is charged with knowledge of the contents and conditions of the policy when he has had it in his possession for a sufficient length of time to enable him to acquaint himself with its contents and conditions. Now this length of time may be variable, depending upon circumstances and conditions. The complaint in the case at bar does not disclose whether the insured had any opportunity to read the policy or not, and I think, in the absence of allegations regarding this subject, unless it must be presumed that he did have, which I doubt, evidence on this question is necessary. Any attempt to review the authorities at any length would be useless. Their number is legion, and I rest my decision on the ground that the rule has been established and followed in this state for twenty years, that it is supported by a large number of state authorities and by the Supreme Court of the United States, and that two rules in the same state should be avoided unless there are reasons for establishing the second rule far more convincing and necessary than those presented in this instance.